661 So.2d 188 (1995)
LEAF RIVER FOREST PRODUCTS, INC., Leaf River Corporation; Great Northern Nekoosa Corporation; Georgia-Pacific Corporation; Warren Richardson; Acker Smith; Perry County, Mississippi
v.
William Dory DEAKLE, et al.
No. 92-CA-00792-SCT.
Supreme Court of Mississippi.
September 14, 1995.
*190 W. Joel Blass, Gillespie & Blessey, Biloxi, Frank D. Montague Jr., Montague Pittman & Varnado, Hattiesburg, Paul D. Walley, Richton, Gene Partain, King & Spalding, Atlanta, GA; Kevin Buster, King & Spalding, Atlanta, GA; for appellant.
Erik M. Lowrey, Hattiesburg, for appellee.
Before PRATHER, P.J., and PITTMAN and McRAE, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
Appellants Leaf River Forest Products, Inc., Leaf River Corporation, Great Northern Nekoosa Corporation, Georgia-Pacific Corporation, Warren Richardson, Acker Smith, and Perry County Mississippi (hereinafter referred to as "LRFP"), who are alleged tortfeasors and defendants in various dioxin suits in several Mississippi courts, sought equitable relief from these numerous suits in the Perry County Chancery Court via a bill of peace. The bill of peace, an ancient procedural vehicle in equity, named not only the plaintiffs (hereinafter "dioxin plaintiffs"), who were suing LRFP in the original dioxin litigation, but the dioxin plaintiffs' respective attorneys of record. The relief sought by way of the bill of peace was case management for the dioxin litigation and injunction of further prosecution of these cases except before the Perry County Chancery Court.
The dioxin plaintiffs filed motions to dismiss the bill of peace, which were granted by the chancellor. There were three different groups of attorneys representing the thousands of dioxin plaintiffs in the dioxin litigation. For convenience in this discussion, we are designating them as the "Deakle Group," the "Pritchard Group," and the "Ingram Group." The Deakle Group, Appellees here, subsequently moved for the imposition of sanctions against LRFP for filing the bill of peace. The chancellor found the bill of peace was frivolous as it applied to the dioxin plaintiffs' attorneys named as parties and imposed sanctions in the amount of $7,387.56 and costs to cover mailing of notices regarding the outcome of the bill of peace to each of the Deakle Group's clients. LRFP has appealed to this Court, seeking review of only one issue:

A. Whether, on this record, sanctions against the Appellants were justified.
This opinion addresses the continued vitality of the ancient bill of peace as well as the propriety of the bill of peace on the instant facts and sanctions pursuant to M.R.C.P. 11 and the Litigation Accountability Act of 1988.

II. FACTS AND PROCEDURAL HISTORY
Appellants LRFP, with the exception of Perry County, were defendants in various dioxin lawsuits in several Mississippi courts, involving thousands of plaintiffs. These cases were based upon claims for damages in regard to the alleged pollution of the Leaf River. Perry County subsequently intervened *191 as a defendant in the dioxin litigation, with the authority of the Perry County Board of Supervisors.[1] The "Deakle Group" of attorneys represented certain dioxin plaintiffs before the Jackson County Circuit Court, which plaintiffs demanded jury trials. The "Pritchard Group" of attorneys represented certain dioxin plaintiffs before the Jackson County Chancery Court. The "Ingram Group" of attorneys represented certain dioxin plaintiffs before the Perry County Chancery Court.
In an attempt to enjoin the multiplicity of suits, LRFP (the dioxin defendants including Perry County), filed a bill of peace in the Perry County Chancery Court against the more than 7000 dioxin plaintiffs. LRFP joined as defendants in the bill of peace the attorneys for the thousands of dioxin plaintiffs. Process was served only on the dioxin plaintiffs' attorneys. The bill of peace requested that the Perry County Chancery Court take jurisdiction of all the above mentioned dioxin litigation. The relief prayed for in the bill of peace included injunction of further prosecution of the dioxin cases except before the Perry County Chancery Court and case management for the dioxin litigation. LRFP also prayed that process issue in accordance with the provisions of M.R.C.P. 4(b) and that the court make such orders regarding service as would be appropriate in light of the vast numbers of dioxin plaintiffs/defendants to the bill of peace.[2]
The Pritchard Group filed a Motion to Dismiss and a Motion for a More Definite Statement or in the Alternative a Motion to Strike. The Deakle Group filed a 12(b) Motion to Dismiss. LRFP amended its complaint for a bill of peace, again serving only the dioxin plaintiffs' attorneys. LRFP's amendment to its bill of peace did not seek any additional relief, but cited further examples of the lack of case management synchronization in the dioxin litigation.
The Perry County chancellors recused themselves and requested that this Court appoint a special chancellor. The Honorable Robert H. Oswald was appointed to hear the complaint for a bill of peace. Judge Oswald dismissed the complaint for a bill of peace on the Pritchard and Deakle Groups' motions, which cases were filed in Jackson County Circuit and Chancery Courts. Subsequently, the Deakle Group moved that sanctions be imposed upon LRFP. At the hearing on this motion, it was argued that while LRFP requested an injunction in its bill of peace, had such an injunction been granted it could only have been enforced as against those parties who were served with the bill of peace, i.e., the dioxin plaintiffs' attorneys. The Deakle Group further argued that the Perry County Chancery Court had no jurisdiction over the thousands of dioxin plaintiffs named as defendants in the bill of peace other than the Deakle Group's clients. The Deakle Group also claimed that Perry County's Board of Supervisors had not authorized the County to act as a plaintiff in this bill of peace. In sum, the Deakle Group contended that by serving only the dioxin plaintiffs' attorneys in the bill of peace, LRFP had violated M.R.C.P. 11 and Miss. Code Ann. § 11-55-7, particularly subsections (g) and (i).
LRFP responded that it had not sought with its bill of peace a consolidation of all cases but a consolidation of the cases in one forum, the coordination of discovery and trial scheduling, and the appointment of a master to determine certain preliminary matters. LRFP further argued that the bill of peace was filed only after comprehensive research and analysis and that there was a good faith belief in the grounds supporting the claims and the relief sought. Moreover, LRFP had hopes of success in the case. LRFP also noted that the bill of peace asked for a temporary hearing to determine the issue of service on the mass numbers of dioxin plaintiffs/defendants to the bill of peace. In response, the Deakle Group stated that had the dioxin plaintiffs' attorneys not been named as *192 parties, no sanctions would have been sought against LRFP.
Perry County argued that it was properly a plaintiff in the bill of peace because that action was part of the evolution of the original dioxin litigation proceedings rather than a wholly new action.
At the close of the hearing, the judge found that Mississippi had a need for a sensible method to deal with the problems presented by massive tort cases, but that suing the attorneys representing the plaintiffs was not the answer. In the bench ruling, the court noted that the bill of peace requested that the court hear and resolve the service problem. The judge awarded the Deakle Group attorney fees in the amount of $7,387.56 and costs in a sum to cover the cost of mailing notices regarding the outcome of the bill of peace to each of the Deakle Group's clients. Finally, in response to a question by counsel, the judge stated that he found the filing of the complaint for the bill of peace was frivolous as to the dioxin plaintiffs' attorneys. LRFP's Motion to Reconsider was denied. Aggrieved, LRFP appealed to this Court.

III. THE LAW

A. Whether, on this record, sanctions against the Appellants were justified.

1. Bill of Peace
A bill of peace is defined by Black's Law Dictionary as "[o]ne which is filed when a person has a right which may be controverted by various persons, at different times, and by different actions." Black's Law Dictionary 151 (5th ed. 1979). "The object of a bill of peace is to obtain the protection of equity against the necessity for maintaining or defending numerous actions at common law in order to protect the interests of the parties, where claims of more than one party on at least one side were involved." Henry J. McClintock, McClintock on Equity § 176, at 480 (2d ed. 1948).
Bills of peace are not ordinarily allowed in cases where many claims of personal or property damage have been made against a single negligent act of the defendant because the determination of a common question would not relieve the necessity of numerous actions at law and because the right to a jury trial is considered of paramount importance to such plaintiffs. McClintock on Equity § 178, at 486-87. However, in cases where "extreme hardship" would result to the defendant, such as where the defendant is subject to numerous suits in differing counties, some of which may be given the same or overlapping trial dates, all of which arise from the same act of negligence, the court should provide relief if any can be given. Id. at 487-88.

a. Does it Still Exist?
While there is no case law in our state addressing this precise point, State Oil & Gas Bd. v. McGowan, 542 So.2d 244, 248-49 (Miss. 1989), vacated and remanded on other grounds, 604 So.2d 312 (Miss. 1992), provides some guidance. In McGowan, the Board argued that the ancient bill of discovery had not survived the adoption of the Mississippi Rules of Civil Procedure; this Court disagreed. The Court stated that although the procedural names of the old writs had been changed with the adoption of the Mississippi Rules of Civil Procedure,[3] no court's jurisdiction or authority "to grant substantive relief" had been altered. McGowan, 542 So.2d at 249, citing M.R.C.P. 2, 82(a). Consequently, "[t]he power and authority of the Chancery Court to grant the substantive relief of `discovery' remains viable and available although it has been broadened and simplified by M.R.C.P. 26-37. The need for this substantive remedy is evident by this lawsuit." McGowan, 542 So.2d at 249.
The ancient bill of peace was a procedural vehicle employed when equitable relief was needed to prevent the hardship which would result from prosecuting or defending numerous actions at law. While the label "bill of peace" may not have survived the adoption of the M.R.C.P., the chancery court's authority to grant substantive relief through equity remains viable and available. The relief LRFP would have received had its bill of peace been sustained was substantive *193 in nature although procedural in form, just as the relief of discovery in McGowan was substantive. And as in McGowan, "[t]he need for this substantive remedy is evident by this lawsuit." McGowan, 542 So.2d at 249.

b. Propriety of the Bill of Peace on the Instant Facts
A bill of peace is generally sustainable where numerous suits affect a common title or community of right or interest or where there is a common question of law or fact, the decision of which will in large part determine many of the actions. McClintock on Equity § 177, at 482-485. "Community of interest" has not been defined by the courts. Id. at 485. Where codes or rules of practice, such as the Mississippi Rules of Civil Procedure, provide an adequate remedy, a bill of peace to allow an injunction against numerous actions should be denied. McClintock on Equity § 181, at 492. The Mississippi Rules of Civil Procedure do not provide a remedy for LRFP's dilemma,[4] therefore, a bill of peace was proper.
The fact that a case otherwise proper for a bill of peace is one which warrants a jury trial by virtue of the Constitution does not prevent sustaining a bill of peace. The right to a jury trial is just one factor for the court to consider when determining whether it will grant the bill of peace. McClintock on Equity § 177, at 484.
The chancery court's equity jurisdiction may properly be invoked to enjoin a multiplicity of successive suits at law by the same plaintiff(s). Griffith, Mississippi Chancery Practice § 439, at 437-38 (2d ed. 1950). See also Tillotson v. Anders, 551 So.2d 212, 214 (Miss. 1989); Guice v. Illinois Cent. R. Co., 111 Miss. 36, 39, 71 So. 259, 260 (1916). Cf. Mississippi Power Co. v. Ballard, 166 Miss. 631, 638, 146 So. 874, 874 (1933) (upheld Guice rule but found no jurisdiction in equity here because no threat of future actions by the same plaintiffs/appellees alleged), reversed and remanded on other grounds, 170 Miss. 479, 153 So. 874 (1934). The chancery court may also exercise its equity jurisdiction to prevent a multiplicity of suits by joining all parties in one suit and determining the sole question upon which past, present, and future liability rests. Illinois Cent. R. Co. v. Garrison, 81 Miss. 257, 265, 32 So. 996, 997 (1902), citing Tribbette v. Illinois Cent. R. Co., 70 Miss. 182, 12 So. 32 (1892). Injunctive relief standing alone is a subject over which the chancery court may assert jurisdiction. Southern Bus Lines v. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of America, 205 Miss. 354, 374, 38 So.2d 765, 768 (1949). See also Griffith, Mississippi Chancery Practice § 24, at 25.
Where the chancery court has exercised its equity jurisdiction, it may proceed to a complete adjudication of the suit and award all appropriate legal and equitable remedies. Shaw v. Owen, 229 Miss. 126, 132-33, 90 So.2d 179, 181 (1956). See also Morgan v. U.S. Fidelity & Guaranty Co., 222 So.2d 820, 826 (Miss. 1969), cert. denied, 396 U.S. 842, 90 S.Ct. 106, 24 L.Ed.2d 93 (1969); First Nat. Bank of Vicksburg v. Middleton, 480 So.2d 1153, 1156 (Miss. 1985). This complete adjudication extends to include the award of any punitive damages appropriate, although the chancery court has actual subject matter jurisdiction over such claims rather than merely pendant jurisdiction. Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 464 (Miss. 1983). Unless the case is one "historically tried by a jury," the chancery court may retain jurisdiction and make determinations typically made by a jury. Cossitt v. Nationwide Mut. Ins. Co., 551 So.2d 879, 883 (Miss. 1989). The Cossitt court provides an example of a case historically tried by a jury in a tort claim for damages. Id.
The numerous dioxin suits affect a community of interest, to wit: LRFP's interest in defending the suits and in managing discovery. The Mississippi Rules of Civil Procedure do not provide a remedy for LRFP's dilemma; therefore, a bill of peace was proper. Regardless of whether a bill of peace was proper, the chancery court's jurisdiction could have been invoked by LRFP's request for an injunction. Whether denominated *194 a bill of peace or a motion for other equitable relief, if such request is a pleading filed subsequent to the initial complaint, as this one is, once the chancery court exercised its equity jurisdiction over any part of the dioxin litigation, it could have proceeded to a complete adjudication of all claims. However, the right to a jury trial must also be considered.
The dioxin cases are the type of suits which are typically tried before a jury. Cossitt, 551 So.2d at 883. Furthermore, Mississippi Code Annotated § 11-7-17 (1972) provides that questions of negligence are for the jury. This would weigh against granting a bill of peace or motion for equitable relief in the instant case, but for the fact that Miss. Code Ann. § 11-5-3 (1972) allows issues to be tried by a jury in chancery court. The Perry County Chancery Court could have granted the equitable relief requested and proceeded to a complete adjudication of the dioxin cases.

c. Who Should Have Been Parties? Who Should Have Been Served?

1) The Parties' Contentions
LRFP claims the dioxin plaintiffs' attorneys were named as parties in the bill of peace because of their direct interest under the contingent fee contracts and because of the absolute control given to those representing great numbers of dioxin plaintiffs under the "extraordinary" contingent fee contract. Further, LRFP claims that the dioxin plaintiffs' attorneys were the only individuals who had the addresses of many of the dioxin plaintiffs. Therefore, only the dioxin plaintiffs' attorneys could be served with process. LRFP also contends that implicit in the bill of peace was the request that the court determine whether service on the dioxin plaintiffs' attorneys would be sufficient notice to make their clients parties.
The Deakle Group argues that the dioxin plaintiffs' attorneys were not designated as agents for process for their individual clients in the bill of peace and that the bill of peace actually attacks the trial lawyers rather than the dioxin plaintiffs. LRFP responds that no relief was sought against any attorney personally. The only relief sought was the bringing of all the dioxin litigation under the control of a single court.

2) The Law and Analysis
Notice of pleadings subsequent to the initial complaint, as contemplated by M.R.C.P. 5, is provided when service is made on the attorney of record. Cooley v. Cooley, 574 So.2d 694, 698 (Miss. 1991). But See Powell v. Powell, 644 So.2d 269, 274 (Miss. 1994) [overruling Cooley to the extent that it conflicts with M.R.C.P. 81]. That the subsequent pleading is denominated a "complaint" does not automatically invoke the service requirements of M.R.C.P. 4, so long as the parties to be served are already subject to in personam jurisdiction of the court. Breland v. Smith-Johnson, Inc., 501 So.2d 389, 391-93 (Miss. 1987) (complaint in intervention). "A `pleading subsequent to the original complaint' which asserts a claim for relief against a person over whom the court has not at the time acquired jurisdiction must be served upon such person not a party along with a copy of a summons in the same manner as the copy of the summons and complaint is required to be served upon the original defendants." M.R.C.P. 5, Comment.
The bill of peace is a pleading subsequent to the initial complaint because it was derived from and a part of the dioxin litigation; therefore, service on each individual dioxin plaintiff (defendants in the bill of peace) as in an independent, unrelated action was not necessary. Service on the dioxin plaintiffs' attorneys of record would be sufficient for compliance with M.R.C.P. 5. Cooley, 574 So.2d at 698. That the bill of peace was denominated a "complaint" is not determinative, automatically requiring service pursuant to M.R.C.P. 4, so long as the parties to be served were already subject to the in personam jurisdiction of the Perry County Chancery Court. Breland, 501 So.2d at 391-93. However, in the instant case, of the parties to be served with the bill of peace, only clients of the Ingram Group were already subject to the personal jurisdiction of the Perry County Chancery Court. Regarding the parties not already subject to the court's jurisdiction (the Pritchard and Deakle Groups' clients and all of the dioxin plaintiffs' attorneys), service pursuant to M.R.C.P. 4 *195 was necessary. M.R.C.P. 5, Comment. Consequently, only the Ingram group's clients and the dioxin plaintiffs' attorneys were properly served.
Regarding naming the dioxin plaintiffs' attorneys as parties in the bill of peace, no sufficient reason has been presented. Plaintiffs' attorneys always have an interest in and some level of control over their clients' suits. Nonetheless, plaintiffs' attorneys are not ordinarily named as parties in typical personal injury cases. No relief was requested of any of the dioxin plaintiffs' attorneys individually or personally; LRFP sought only synchronization of the dioxin litigation, to which the attorneys were not parties.
LRFP's contention that the dioxin plaintiffs' attorneys were named as parties because only the attorneys had the names and addresses of some of the actual parties (dioxin plaintiffs), therefore only the attorneys could be served, is disingenuous. Some of the dioxin plaintiffs could have been served via their attorneys of record without having named the attorneys as parties. See M.R.C.P. 5 and discussion of same, above. Furthermore, LRFP asked in the bill of peace that the court resolve the service problem; the court subsequently ordered the dioxin plaintiffs' attorneys to provide the names and addresses of all dioxin plaintiffs. The dioxin plaintiffs' attorneys should not have been made parties to the bill of peace.

2. Rule 11, M.R.C.P.

a. The Parties' Contentions
LRFP contends that its bill of peace was properly filed with a reasonable hope of success of obtaining orderly management of the dioxin litigation. Rather than filed to harass, it was filed to escape harassment, according to LRFP. The Deakle Group claims that LRFP filed its bill of peace solely to harass the trial lawyers. The Deakle Group also argues that Perry county should be subject to sanctions for the additional reason that they entered into this litigation without express authority. The Board of Supervisors granted the County authority to become a "party defendant" in the dioxin litigation. The Deakle Group implies that this is wholly different than becoming a plaintiff in the bill of peace.
LRFP responds that Perry County was acting within the authority granted by the Board of Supervisors when it participated in the bill of peace, which is a part of the defense to the dioxin litigation in which the county was specifically authorized to participate.

b. The Law
M.R.C.P. 11 authorizes monetary sanctions to pay the non-offending party's reasonable expenses, including attorney fees. M.R.C.P. 11(b). Sanctions under M.R.C.P. 11 "are warranted when the pleading or motion is 1) frivolous or 2) is filed for the purpose of harassment or delay." Matter of Will of Fankboner, 638 So.2d 493, 498 (Miss. 1994), citing M.R.C.P. 11. "`[A] pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success.'" Stevens v. Lake, 615 So.2d 1177, 1184 (Miss. 1993), quoting Tricon Metals & Services, Inc. v. Topp, 537 So.2d 1331, 1335 (Miss. 1989). Though a case may be weak or "light-headed," that is not sufficient to label it frivolous. Nichols v. Munn, 565 So.2d 1132, 1137 (Miss. 1990). This Court found in Tricon that a plaintiff has no hope of success where a defendant has a complete defense to the plaintiff's claim. Tricon, 537 So.2d at 1336.
The second standard, a claim interposed for harassment or delay, generally can not be met "`where a plaintiff has a viable claim.'" Stringer v. Lucas, 608 So.2d 1351, 1359 (Miss. 1992), quoting Bean v. Broussard, 587 So.2d 908, 913 (Miss. 1991). The fact that a case is weak is not sufficient to find that it was brought to harass. Brown v. Hartford Ins. Co., 606 So.2d 122, 127 (Miss. 1992).
For purposes of either of the twin standards of Rule 11, "[f]iling ... triggers the possibility of sanctions" and there is no continuing duty of inquiry. Nationwide Mut. Ins. Co. v. Evans, 553 So.2d 1117, 1120 (Miss. 1989). Restated, there is no requirement that a cause be abandoned if the party or attorney discovers or could discover after filing that the claim is frivolous. Id. Monetary sanctions pursuant to M.R.C.P. 11 may *196 be imposed against either the attorney, the party, or both. M.R.C.P. 11. See also Bean, 587 So.2d at 911-912 (trial courts had inherent authority to impose sanctions on attorneys pursuant to Rule 11 prior to amendment of Rule specifically allowing same).
This Court will reverse only where the trial court abused its discretion in imposing sanctions, so long as correct legal standards were employed. January v. Barnes, 621 So.2d 915, 921 (Miss. 1992), quoting Nationwide, 553 So.2d at 1119. Where the trial court misperceived the correct legal standard, the error becomes one of law, therefore the deference usually afforded the trial court's decisions is not warranted. January, 621 So.2d at 921, quoting Nationwide, 553 So.2d at 1119.

c. Analysis
If LRFP's bill of peace was filed with no hope of success or if LRFP had no viable claim at the time it was filed, M.R.C.P. 11 sanctions are appropriate. Given the community of interest, the lack of remedy provided by the M.R.C.P., and the ability of the chancery court to impanel a jury for certain issues, LRFP's bill of peace had some hope of success and stated a viable claim at the time it was filed. However, as there was no legitimate reason for naming the dioxin plaintiffs' attorneys as parties, there could have been no hope of success nor any viable claim with regard to these attorneys. In other words, the bill of peace, with regard to the dioxin plaintiffs' attorneys, was frivolous. Furthermore, as the bill of peace was a pleading filed subsequent to the initial complaint, rather than a new action, there was no hope of success as to those parties not served, i.e., the Deakle and Pritchard groups' clients. If the bill had been a new and independent action, there would have been no hope of success as against any of the dioxin plaintiffs because none were served.
No mis-perception of the correct legal standard or abuse of discretion on the part of the trial court is revealed by the record. Accordingly, this Court affirms the sanctions imposed pursuant to M.R.C.P. 11.
The Deakle Group's contention that Perry County is also subject to sanctions for participating in the bill of peace without specific authority to do so need not be reached by this Court. Perry County is subject to sanctions just as the other Appellants are, whether or not the County had authority to participate in the bill of peace.

3. The Litigation Accountability Act of 1988

a. The Parties' Contentions
LRFP contends that the sanctions imposed were not pursuant to the Act, but to M.R.C.P. 11. The Deakle Group apparently agrees as it addresses only the twin standards of M.R.C.P. 11 rather than the Act.[5]

b. The Law
The Litigation Accountability Act of 1988, Miss. Code Ann. § 11-55-1, et seq. (Supp. 1994), applies to all claims and defenses filed or appeals perfected after July 1, 1988, which includes the instant case. Miss. Code Ann. § 11-55-15 (Supp. 1994). As applied to the case sub judice, the "Act provides that the court shall award attorney fees [and costs] against a party or attorney if the court finds that an action [or] claim ... is without substantial justification, was interposed for delay or harassment, or if an attorney or party unnecessarily expanded the proceedings by other improper conduct." Jackson County School Bd. v. Osborn, 605 So.2d 731, 735 (Miss. 1992), citing Miss. Code Ann. § 11-55-5(1) (Supp. 1991). See also Fankboner, 638 So.2d at 498.
A claim is without substantial justification when it is "frivolous, groundless in fact or in law, or vexatious, as determined by the court." Miss. Code Ann. § 11-55-3(a) (Supp. 1994). Frivolity is defined, for purposes of this section, just as it is for Rule 11 purposes: a claim is frivolous "`only when, objectively speaking, the pleader or movant has no hope *197 of success.'" Smith v. Malouf, 597 So.2d 1299, 1303 (Miss. 1992), quoting Bean, 587 So.2d at 912.
As this Court looks to the M.R.C.P. 11 definition of "frivolous" for purposes of the Act, it follows that Rule 11 interpretations of when claims are interposed for harassment or delay will also apply to the Litigation Accountability Act. Pursuant to Rule 11, the harassment or delay standard generally can not be met "`where a plaintiff has a viable claim.'" Stringer, 608 So.2d at 1359, quoting Bean, 587 So.2d at 913. Under M.R.C.P. 11, the fact that a case is weak is not sufficient to find that it was brought to harass. Brown, 606 So.2d at 127. The same holds true when sanctions are requested pursuant to the Act.
Contrary to M.R.C.P. 11, the Act imposes a duty of continuing inquiry, allowing sanctions where an action, claim, or defense is not voluntarily dismissed within a "reasonable time" after the attorney or party responsible for the claim knows or reasonably should have known that he could not prevail on the claim. Miss. Code Ann. § 11-55-5(2) (Supp. 1994). Where sanctions are proper under the Act, they may be assessed against the offending attorney or party or both, at the court's discretion. Miss. Code Ann. § 11-55-5(3) (Supp. 1994).
Section 11-55-7 requires that the court imposing sanctions specifically set forth the reasons for such an award. The Act sets forth eleven factors to consider when determining whether to assess attorney fees and costs pursuant to the Act and in what amount. When reviewing the trial court's decision regarding sanctions pursuant to the Act, this Court is limited by the familiar abuse of discretion standard. Osborn, 605 So.2d at 735.

c. Analysis
As discussed previously, LRFP's bill of peace was frivolous pursuant to M.R.C.P. 11 because there was no hope of success as against some parties. This same definition of frivolity applies to determine whether a claim is without substantial justification for purposes of the Act. Although LRFP's bill of peace was without substantial justification as to the dioxin plaintiffs' attorneys and as to the Pritchard and Deakle Groups' clients, warranting sanctions pursuant to the Act, Miss. Code Ann. § 11-55-7 (Supp. 1994) requires that the court imposing sanctions specifically set forth the reasons for such an award. The trial court provided no reasons for the sanctions imposed; therefore, support for such sanctions cannot be found in the Act. It follows that the sanctions imposed on LRFP by the trial court must be pursuant to M.R.C.P. 11.

IV. CONCLUSION
Since the chancery court gave no specific reasons for imposing sanctions, as required by the Litigation Accountability Act, the sanctions imposed against LRFP must be pursuant to M.R.C.P. 11. The sanctions imposed were justified. Given the community of interest, the lack of remedy provided by the M.R.C.P., and the ability of the chancery court to impanel a jury for certain issues, LRFP's bill of peace had some hope of success and stated a viable claim at the time it was filed.
However, as there was no legitimate reason for naming the dioxin plaintiffs' attorneys as parties, there could have been no hope of success nor any viable claim with regard to these attorneys, nor with regard to the Pritchard and Deakle Groups' clients because they were not properly served. Consequently, the bill of peace was frivolous with regard to the dioxin plaintiffs' attorneys and the dioxin plaintiffs in the Pritchard and Deakle Groups. This Court affirms the judgment of the Perry County Chancery Court as to the imposition of sanctions.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., concurs in result only.
DAN M. LEE, P.J., and SULLIVAN, J., not participating.
NOTES
[1] But see Perry County v. Ferguson, 618 So.2d 1270 (Miss. 1993), where this Court affirmed the trial court's denial of Perry County's attempt to intervene as a defendant in Jackson County Circuit Court.
[2] At the status conference, the court ordered the attorneys to confer and agree on furnishing the names and addresses of the dioxin plaintiffs, else the court would fix a deadline for furnishing such information.
[3] Effective January 1, 1982.
[4] The M.R.C.P. omitted Rule 23, which provided for class actions.
[5] The Deakle Group argues that it should not be required to send notice to its clients regarding the outcome of the bill of peace, pursuant to Rule 1.4 of the Rules of Professional Conduct, because the bill of peace issue was extensively covered by the news media. This question is not raised by LRFP's appeal; therefore, the Deakle Group having failed to perfect a cross-appeal, this Court declines the invitation to address this question.